UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X

TERON MELVILLE,

                         Plaintiff,

        – against –

JOHN DOES 1-6, *et al.*,

                    Defendants.
------------------------------------------------------------- X

CHRISTOL KEANE,

                         Plaintiff,

        – against –

JOHN DOES 1-6, *et al.*,

                    Defendants.
------------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

18-CV-04260 (AMD) (JO)

18-CV-03765 (AMD) (JO)

**ANN M. DONNELLY**, United States District Judge:

On July 30, 2018, the plaintiffs sued Lieutenant Kevin Cain,[1] the City of New York and six unnamed police officers, alleging violations of their Fourth, Fifth and Fourteenth Amendment rights. (*Melville v. John Does 1-6, et al.*, No. 18-CV-4260, ECF No. 1; *Keane v. John Does 1-6, et al.*, No. 18-CV-3765, ECF No. 1.)[2] The plaintiffs withdrew some of their claims but are proceeding on their 42 U.S.C. § 1983 excessive force and municipal liability claims. (*See* ECF No. 27.) Before the Court is the defendants' motion for summary judgment. (ECF No. 29.) For the reasons that follow, the motion is granted.

---

[1] The plaintiffs identify Lieutenant Cain as "John."

[2] The Court consolidated the actions. (ECF No. 11.) Unless otherwise noted, ECF numbers refer to docket entries in *Melville*, No. 18-CV-4260.

## BACKGROUND[3]

On January 30, 2016, shortly before 11:00 p.m., Teron Melville was driving on Atlantic

Avenue in Brooklyn, New York, while Christine Keane sat in the back seat with her two-and-a-

half-year-old daughter. (ECF No. 31, Defendants' 56.1 Statement ("Def. 56.1") ¶¶ 2-4; ECF No.

24, Plaintiffs' 56.1 Statement ("Pl. 56.1") ¶¶ 2-4.)[4] Mr. Melville bought the car in 2015, and it

was registered to him; it had New York "vanity" plates that read "SW3RVE." (Def. 56.1 ¶¶ 8, 27;

Pl. 56.1 ¶¶ 8, 26; ECF No. 32-4, Melville 50-H Hearing Transcript ("Melville Tr.") 20:17-21:9.)

At one point, Mr. Melville noticed an unmarked police car across the street and a marked police

car behind him. (Melville Tr. 10:13-15, 11:12-13, 12:15-13:5.) Mr. Melville assumed by the way

the marked car was following him that the officers were running his plate. (*Id.* 14:2-11.)

Officers Christopher D'Alto and Tyrone Gill were on patrol in a car equipped with

"Mobile Plate Hunter," which automatically scans license plates. (Def. 56.1 ¶ 5; Pl. 56.1 ¶ 5;

---

[3] In deciding whether summary judgment is appropriate, the Court resolves all ambiguities and draws all reasonable inferences in favor of the plaintiff, the non-moving party. *See Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); *Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 (2d Cir. 2008). On a motion for summary judgment, the Court's consideration is limited to factual material that would be admissible evidence at trial. *Local Unions 20 v. United Bhd. of Carpenters and Joiners of Am.*, 223 F. Supp. 2d 491, 496 (S.D.N.Y. 2002). Factual allegations that are disputed without a citation to admissible evidence are deemed admitted, as long as they are also supported by the record. Local Civ. R. 56.1; *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003). Factual allegations that are not disputed are also deemed admitted, as long as they are supported by the record. *Id.* I disregard any arguments in the Rule 56.1 statements. *Pape v. Dircksen & Talleyrand Inc.*, No. 16-CV-5377, 2019 WL 1435882, at *2 (E.D.N.Y. Feb. 1, 2019), *report and recommendation adopted*, 2019 WL 1441125 (E.D.N.Y. Mar. 31, 2019).

[4] While the plaintiffs submitted a 56.1 statement with their pretrial conference letter (ECF No. 24), they did not submit a final 56.1 statement with their opposition papers, although both the local rules and my individual rules require it. That is significant as more than just a procedural or technical matter, because the defendants' final 56.1 statement includes additional factual statements to which the plaintiffs do not respond. "Where the party opposing a motion for summary judgment fails to submit a *proper* counterstatement of material facts, the court may choose to accept all factual allegations of the opposing part[y] as true for the purposes of deciding the motion." *Mt. Hawley Ins. Co. v. Abraham Little Neck Dev. Grp., Inc.*, No. 09-CV-3463, 2015 WL 867010, at *5 (E.D.N.Y. Feb. 27, 2017) (quotation marks and citations omitted). Alternatively, the Court may "conduct an assiduous review of the record." *Id.* The factual recitation is based on my review of the entire record.

2

ECF No. 32-5 ("D'Alto Decl.") ¶ 2.)  At approximately 10:55 p.m., Mobile Plate Hunter scanned

Mr. Melville's license plate and identified it as belonging to a stolen motorcycle.  (Def. 56.1 ¶ 6;

Pl. 56.1 ¶ 6; ECF No. 32-9 ("Sprint Event Chronology").)  The officers followed the car,

requested backup and relayed the plate number to central dispatch, who confirmed that a vehicle

associated with the plate had been reported stolen.  (Def. 56.1 ¶¶ 7, 9-10; Pl. 56.1 ¶¶ 7, 9-10;

D'Alto Decl. ¶¶ 5-6.)[5]

Other officers came to the scene and blocked Mr. Melville's car as it was stopped at

Atlantic Avenue and Vermont Street.  (Def. 56.1 ¶ 11; Pl. 56.1 ¶ 11; Melville Tr. 10:12-15:5; ECF

No. 32-3, Keane 50-H Hearing Transcript ("Keane Tr.") 11:10-14; Sprint Event Chronology.)

Officers approached the car, their weapons drawn, and removed the plaintiffs from the vehicle.

(Def. 56.1 ¶¶ 12, 14; Pl. 56.1 ¶¶ 12, 14; Melville Tr. 15:12-19; Keane Tr. 11:13-14.)

Mr. Melville testified at his 50-H hearing that one officer "grabbed [him] and body

slammed [him] to the ground," put his knee on Mr. Melville's back and applied pressure, and then

pushed Mr. Melville's arms toward his neck.  (Melville Tr. 17:25-18:3, 18:23-19:11.)  When Mr.

Melville told the officer that he was hurting him, the officer told him to relax, and then

handcuffed him.  (Id. 19:11-18.)  Mr. Melville also complained about five times that the handcuffs

were too tight, and an officer eventually loosened them.  (Id. 23:18-24:9.)

According to Ms. Keane, the police officers put "a gun less than twelve inches from [her]

face" through the window of the car and "yanked [her] out of the car;" she hit her knee on the

door as she grabbed her daughter, who had been sleeping.  (Keane Tr. 11:15-12:14.)  The police

officers did not otherwise touch her.  (Id. 14:23-15:5.)

---

[5] The plaintiffs deny that the evidence supports that central dispatch confirmed that a vehicle associated with the plates had been reported stolen, and raise a hearsay objection. (Pl. 56.1 ¶ 9.) However, they cite no evidence that contradicts this statement. They agree that a motorcycle with the same plate was reported stolen but say that motorcycles have different plates. (See Pl. 56.1 ¶ 1; ECF No. 35 at 9.)

3

Mr. Melville testified that Lieutenant Kevin Cain was present at the scene, but did not say that he participated in arresting him. (Melville Tr. 15:12-16:10.) While the defendants agree that the radio communications establish that Lieutenant Cain arrived at the scene at approximately 10:57 p.m., Lieutenant Cain maintains that he did not see officers take anyone out of the car or handcuff anyone. (Def. 56.1 ¶¶ 15-16; ECF No. 32-6 ("Cain Decl.") ¶ 4; Sprint Event Chronology.)

Lieutenant Cain learned from other officers at the scene that there was some question about whether Mr. Melville's car was really stolen. (Def. 56.1 ¶ 26; Pl. 56.1 ¶ 25; Cain Decl. ¶ 5.) After further investigation, the officers determined that Mr. Melville was the registered owner of his car, and that the scanner had identified the car as stolen because a motorcycle with the same plates had been reported stolen. (Def. 56.1 ¶ 27; Pl. 56.1 ¶ 26; Cain Decl. ¶ 6; D'Alto Decl. ¶ 12.)[6] Lieutenant Cain explained the situation to the plaintiffs, apologized for the error, advised Mr. Melville to contact the Department of Motor Vehicles and gave Mr. Melville his contact information. (Def. 56.1 ¶¶ 28, 29; Pl. 56.1 ¶¶ 27, 28; Cain Decl. ¶¶ 7, 8; Melville Tr. 29:16-30:2.) The lieutenant called Mr. Melville a few days later to see if he had contacted the DMV. (Melville Tr. 26:3-27:13.)

The parties dispute the duration of the incident. Citing the Sprint Event Chronology, which reflects that the "event" was created at 10:55 p.m. and closed at 11:19 p.m., the defendants claim that it lasted approximately 20 minutes (Def. 56.1 ¶ 30; Sprint Event Chronology; ECF No. 32-8 (the UF250 says that the stop was "15 minutes")), but Mr. Melville testified that he was

---

[6] The plaintiffs claim—without citing any evidence—that the evidence does not support that this determination was made "after further investigation," and seem to question what the determination revealed. (Pl. 56.1 ¶ 26.) According to a police complaint report created in 2012, a motorcycle with the same plate was reported stolen. (ECF No. 32-7.)

handcuffed for "a good forty-five minutes to an hour" (Melville Tr. 23:7-11), and Ms. Keane

testified that the incident lasted "about an hour" (Keane Tr. 14:12-18).

## LEGAL STANDARD

Summary judgment is appropriate only if the parties' submissions, including deposition

transcripts, affidavits, or other documentation, show that there is "no genuine dispute as to any

material fact," and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);

*see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The movant has the

"burden of showing the absence of any genuine dispute as to a material fact." *McLee v. Chrysler*

*Corp.*, 109 F.3d 130, 134 (2d Cir. 1997).

A fact is "material" when it "might affect the outcome of the suit under the governing

law," and an issue of fact is "genuine" if "the evidence is such that a reasonable jury could return

a verdict for the nonmoving party." *Barlow v. Male Geneva Police Officer Who Arrested Me on*

*Jan. 2005*, 434 F. App'x 22, 25 (2d Cir. 2011) (summary order) (citations and quotation marks

omitted).  Once the moving party has met its burden, the party opposing summary judgment

must identify specific facts and affirmative evidence that contradict those offered by the moving

party to demonstrate that there is a genuine issue for trial. *Ethelberth v. Choice Sec. Co.*, 91 F.

Supp. 3d 339, 349 (E.D.N.Y. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

## DISCUSSION

### I.   Procedural History

The plaintiffs' complaints allege claims against Lieutenant Cain and unidentified "John

Doe" officers for using excessive force (ECF No. 1 at 1-3; *Keane*, ECF No. 1 at 1-3), but do not

include claims for failure to intervene, nor do they mention supervisory liability (*see id.*).

After the defendants gave the plaintiffs the names of the officers who were at the scene, Magistrate Judge James Orenstein gave the plaintiffs the opportunity to amend their complaints (*see* January 23, 2019 Minute Entry), but the plaintiffs did not amend their complaints. As a result, Lieutenant Cain—who the parties agree did not use excessive force—is the only individual defendant in this case.[7]

In short, there are claims for excessive force, but the only individual defendant in this case did not use any force; none of the officers who allegedly used the force are defendants. There are no claims for supervisory liability or failure to intervene.

## II.  Excessive Force

As noted above, the parties agree that Lieutenant Cain did not use excessive force. (*See* Def. 56.1 ¶ 16; Pl. 56.1 ¶ 15.)  However, the plaintiffs contend that Lieutenant Cain—the highest ranking officer on the scene—"failed to take action to stem the excessive force" and "was grossly negligent in supervision of his subordinates," who they claim did use excessive force. (ECF No. 35 at 8.)

As discussed above, the plaintiffs did not allege in their complaints that Lieutenant Cain was grossly negligent in supervising his subordinates, or any other theory of supervisory liability. (*See* ECF No. 1; *Keane*, ECF No. 1.)  Nor did the plaintiffs plead a claim for failure to intervene; their excessive force claims were based on alleged violent acts during the stop. (*See id.*)  Instead, the plaintiffs raise supervisory liability theories for the first time in their opposition to summary judgment. (*See* ECF No. 35 at 8-9.)  This alone is a reason to grant summary judgment. *See Ahmad v. Port Auth. of N.Y. & N.J.*, No. 09-CV-3134, 2011 WL 7080691, at *6 (E.D.N.Y. Dec. 7, 2011) ("[P]laintiff's complaint does not allege a claim based on [an officer's]

---

[7] It does not appear that Lieutenant Cain or any officers that were present during the incident were deposed; the lieutenant and an officer submitted declarations. (*See* ECF Nos. 32-5, 32-6.)

6

failure to intervene and plaintiff is not entitled to raise a new theory of liability for the first time in opposition to a motion for summary judgment."), *report and recommendation adopted*, 2012 WL 194965 (E.D.N.Y. Jan. 23, 2012).  However, even if the plaintiffs had alleged supervisory liability in their complaints, their claims against Lieutenant Cain could not withstand summary judgment.

The Fourth Amendment prohibits the use of unreasonable and excessive force during an arrest. *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010).  Because the test is one of "objective reasonableness," the inquiry is fact specific. *Id.* (citing *Bryant v. City of New York*, 404 F.3d 128, 136 (2d Cir. 2005)); *see also Graham v. Connor*, 490 U.S. 386, 397 (1989).  Whether the force used in connection with an arrest is reasonable depends on a "careful weighing of the facts of each particular case, including whether the suspect poses a threat, resists, or attempts to evade arrest, and the severity of the crime at issue." *Esmont v. City of New York*, 371 F. Supp. 2d 202, 214 (E.D.N.Y. 2005) (citing *Graham*, 490 U.S. at 396).  The record must be evaluated "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Mesa v. City of New York*, No. 09-CV-10464, 2013 WL 31002, at *18 (S.D.N.Y. Jan. 3, 2013) (quoting *Tracy*, 623 F.3d at 96) (internal quotation marks omitted).  "Not every push or shove" violates the Fourth Amendment, "even if it may later seem unnecessary in the peace of a judge's chambers." *Graham*, 490 U.S. at 396 (citations and quotation marks omitted).

The plaintiffs claim that some officers—not Lieutenant Cain—used excessive force when they pointed guns at the plaintiffs, body slammed and handcuffed Mr. Melville, and yanked Ms. Keane out of the car.  (ECF No. 35 at 10.)  Courts have found that excessive force claims did not arise in similar circumstances. *See, e.g., McKenzie v. City of New York*, No. 17-CV-4899, 2019 WL 3288267, at *10 (S.D.N.Y. July 22, 2019) ("[The plaintiff] claims excessive force based on

his having been pulled out of his vehicle and shoved against the side of a car. But this form of police action does not, without more, establish that the officers used excessive force against him, let alone that an officer on the scene would recognize such actions as unreasonable."); *Pittman v. City of New York*, No. 14-CV-4140, 2014 WL 7399308, at *9 n.12 (E.D.N.Y. Dec. 30, 2014) ("[T]he fact that the officers approached the car with their guns drawn does not support a claim of excessive force."). On the other hand, there is no evidence that either plaintiff resisted arrest or was in any way violent.

But the question is really beside the point, because even if there were sufficient evidence to support an excessive force claim, there is insufficient evidence of Lieutenant Cain's involvement to allow the claim to proceed against him. A supervisory official will not be found liable under Section 1983 simply by virtue of his "high position of authority." *Villafane v. Sposato*, No. 16-CV-3674, 2017 WL 4179855, at *12, (S.D.N.Y. Aug. 22, 2017) (quoting *Whitenack v. Armor Med.*, No. 13-CV-2071, 2014 WL 5502300, at *5 (E.D.N.Y. Oct. 30, 2014)), *report and recommendation adopted*, 2017 WL 4157220 (E.D.N.Y. Sept. 15, 2017). Rather, a plaintiff must show that a supervisor was personally involved in the constitutional violation. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Personal involvement means either (1) directly participating in the violation; (2) failing to remedy the wrong after it comes to his attention; (3) creating a policy or custom under which unconstitutional practices occur, or allowing the continuation of such custom or policy; (4) being grossly negligent in supervising subordinates who committed the wrongful acts; or (5) exhibiting deliberate indifference by failing to act on information indicating that unconstitutional acts are occurring. *Id.* "In addition to satisfying one of these requirements, a plaintiff must also establish that the supervisor's actions

8

were the proximate cause of the plaintiff's constitutional deprivation." *Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014).

Courts in this district have questioned whether all five *Colon* factors still apply, and to what extent, after the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *See Ojo v. United States*, No. 15-CV-6089, 2018 WL 3863441, at *9 (E.D.N.Y. Aug. 14, 2018) ("*Iqbal* implicitly abrogated, at least in part, the test for supervisory liability the Second Circuit articulated in *Colon* . . . Nonetheless, there is a certain degree of 'conflict' among district courts about exactly how *Iqbal* affects *Colon*."). The Second Circuit has not "determined the contours of the supervisory liability test . . . after *Iqbal*." *Id.* at *10 (quoting *Raspardo*, 770 F.3d at 117) (internal quotation marks omitted); *see also Lombardo v. Graham*, 807 F. App'x 120 n.1 (2d Cir. 2020) (summary order) ("Although we have observed that *Iqbal* may have heightened the requirements for supervisory liability by requiring more direct personal involvement, we need not decide that issue[.]"). Despite the questions raised by *Iqbal*, "the majority of courts in this Circuit have continued to apply the *Colon* factors absent contrary instructions from the Court of Appeals." *Harrell v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 15-CV-7065, 2019 WL 3821229, at *7 (S.D.N.Y. Aug. 14, 2019); *compare Butler v. Suffolk Cty.*, 289 F.R.D. 80, 95 n.8 (E.D.N.Y. 2013) ("[T]he weight of authority among the district courts in the Eastern District of New York suggests that only two of the *Colon*-factors—direct participation and the creation of a policy or custom—survive *Iqbal*.") *with Walker v. City of New York*, 63 F. Supp. 3d 301, 310 n.9 (E.D.N.Y. 2014) ("This Court holds that absent any contrary directive from the Second Circuit, all five *Colon* factors survive the Supreme Court's decision in [*Iqbal*.]"), *aff'd*, 621 F. App'x 74 (2d Cir. 2015).

9

I do not need to address this question, however, because the plaintiffs' claim cannot withstand summary judgment even if I apply the *Colon* factors. The plaintiffs say that the fourth factor—grossly negligent supervision of subordinates—applies, but cite no evidence or law to support this argument, nor do they explain why Lieutenant Cain was grossly negligent. (ECF No. 35 at 8-9); *see Elufe v. Aylward*, No. 09-CV-458, 2011 WL 477685, at *7 (E.D.N.Y. Feb. 4, 2011) ("[C]onclusory accusations are not sufficient to sustain a claim for supervisory liability.").

There is no evidence in the record that Lieutenant Cain knew or should have known that it was likely that the officers who stopped Mr. Melville would use excessive force; there is no evidence whatsoever that any of those officers had a history of misconduct. The only evidence of Lieutenant Cain's involvement is that he arrived at the scene. (Melville Tr. 15:12-16:10; Sprint Event Chronology.) Lieutenant Cain said that he did not see the officers taking the plaintiffs from the car or handcuffing Mr. Melville. (Cain Decl. ¶ 4.) For his part, Mr. Melville said only that Lieutenant Cain "was there," and that he apologized to Mr. Melville and gave him his contact information; he did not say whether Lieutenant Cain saw the officers do anything to either plaintiff. (*See* Melville Tr. 15:12-16:10, 29:16-30:2.)

But even if I were to read Mr. Melville's testimony to say that Lieutenant Cain saw the officers arresting Mr. Melville, there would still not be an issue of fact as to whether Lieutenant Cain was grossly negligent in supervising other officers, let alone that this caused the alleged constitutional deprivation. *See Bermudez v. Edmonds*, No. 15-CV-3240, 2017 WL 11507652, at *7 (E.D.N.Y. Dec. 19, 2017) ("Plaintiff proffers no evidence that is actually probative of whether [the defendant] knew or should have known that there was a high degree of risk that the officers in this case would use excessive force against plaintiff. As an initial matter, in arguing [the defendant's] liability, plaintiff does not discuss or cite any evidence suggestive of a problematic

10

history or pattern of related misconduct on the part of any of the subordinate officers involved in this case. . . . [S]uch evidence is often necessary for a plaintiff to survive summary judgment on a gross negligence or deliberate indifference theory of supervisory liability."); *Raffaele v. City of New York*, 242 F. Supp. 3d 152, 155, 160 (E.D.N.Y. 2017) (supervisory liability claim against two sergeants and a lieutenant—one of whom "was standing approximately four to six feet away" when another officer hit the plaintiff—could not move forward on a theory of grossly negligent supervision where "[t]he record before the court [was] void of evidence showing that [the hitting officer's] actions, preceding his interaction with plaintiff, were unlawful").

Nor is the plaintiff's claim that Lieutenant Cain should have taken action to stem the use of force persuasive. *Amnesty America v. Town of West Hartford*, 361 F.3d 113 (2d Cir. 2004), which the plaintiffs cite, is of no help to them, because it concerns a town's liability for the actions of its police chief, who had "final policymaking authority with respect to the actions of the police force;" the claim against Lieutenant Cain concerns his liability, not municipality liability, and there is no evidence that Lieutenant Cain had final policymaking authority.[8]

In short, the plaintiffs' supervisory liability claims were raised too late, are conclusory and are not supported by evidence. I grant the defendants' motion on the claim against Lieutenant Cain.

---

[8] The plaintiffs do not argue that Lieutenant Cain is liable for not intervening—the fifth *Colon* factor—nor do they suggest that there is any evidence to support such a theory. There is no evidence in the record that Lieutenant Cain could have done anything in the moment to change the manner in which the officers removed the plaintiffs from the car. *See Raffaele*, 242 F. Supp. 3d at 161 ("[P]laintiff's supervisory liability claim, based on a failure to act on information indicating that unconstitutional acts were occurring . . . fails because the other police officer defendants, including the supervising officers, had no realistic opportunity to intercede.") (quotation marks omitted).

### III.   Municipal Liability

"To establish municipal liability under 42 U.S.C. § 1983, a plaintiff must demonstrate that the deprivation of his constitutional rights was 'caused by a governmental custom, policy, or usage of the municipality.'" *Deferio v. City of Syracuse*, 770 F. App'x 587, 589-90 (2d Cir. 2019) (summary order) (quoting *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012)); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); *Cash v. Cty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011), *cert. denied*, 565 U.S. 1259 (2012) ("[T]o establish municipal liability under § 1983, a plaintiff must prove that action pursuant to official municipal policy caused the alleged constitutional injury.") (citation and quotation marks omitted). "The existence of a municipal policy that gives rise to *Monell* liability can be established in four ways: (1) a formal policy endorsed by the municipality; (2) actions directed by the government's authorized decisionmakers or those who establish governmental policy; (3) a persistent and widespread practice that amounts to a custom of which policymakers must have been aware; or (4) a constitutional violation resulting from policymakers' failure to train municipal employees." *Deferio*, 770 F. App'x at 589-90 (citations, quotation marks and alterations omitted); *see also Nunez v. N.Y.C. Hous. Auth.*, No. 18-CV-2369, 2020 WL 1903999, at *5 (S.D.N.Y. Apr. 17, 2020). "Once a plaintiff has demonstrated the existence of a municipal policy, a plaintiff must then establish a causal connection, or an affirmative link, between the policy and the deprivation of his constitutional rights." *Deferio*, 770 F. App'x at 590 (citation and quotation marks omitted).

The plaintiffs' theory is the City violated their rights by "the unconstitutional application of a valid policy, or by a city employee's single tortious decision or cause of action." (ECF No. 35 at 12-13.) The "valid" policy, the plaintiffs seem to say, is the use of scanners. They say that an unidentified "individual in authority" made a "decision" to "interpret the information received

12

from this plate scanner," which "led to a horrific experience for the plaintiffs;" the plaintiffs add

that Lieutenant Cain's "decision to allow the officers to act as they did represent[s] the conscious

choice of the municipality." (*Id.* at 13.) The plaintiffs do not mention the use of scanners as a

policy in their complaints (*see* ECF No. 1; *Keane*, ECF No. 1), and cite no evidence to support

their theory (*see* ECF No. 35 at 12-13).

Because the plaintiffs have not presented any evidence that the "individual in authority" or

Lieutenant Cain are policymakers, these isolated instances of alleged wrongdoing do not give rise

to *Monell* liability. *See Treadwell v. Cty. of Putnam*, No. 14-CV-10137, 2016 WL 1268279, at *4

(S.D.N.Y. Mar. 30, 2016) ("*Monell* liability does not derive from individual incidents of

wrongdoing by non-policymakers.").

The conclusory argument that the use of scanners represents the municipality's policy—

without any supporting evidence—does not save the plaintiffs' claim. The record does not

contain evidence that there was a policy or custom to use scanners, interpret the information from

the scanners in a particular way, or use a certain level of force based on the information received

from the scanners. *See Ortiz v. Case*, 782 F. App'x 65, 68 (2d Cir. 2019) (summary order) ("The

bare assertion that such a policy or custom exists, without any factual basis to support its

existence, even circumstantially, or to demonstrate how it results in constitutional violations, is

not enough to defeat a motion for summary judgment."); *Sullivan v. City of New York*, 690 F.

App'x 63, 67 (2d Cir. 2017) (summary order) ("[The plaintiff] provides insufficient evidence that

any alleged violation resulted from a policy or custom. In fact, [the plaintiff] himself undermines

his allegations of a policy or custom by contending that the arresting police officers acted contrary

to the policy of the NYPD regarding potential domestic violence matters when they arrested him.

13

Thus, [the plaintiff] did not present sufficient evidence of *Monell* liability to reach a jury.")
(citations omitted).

Accordingly, I grant the defendants' motion for summary judgment on this claim.

## CONCLUSION

For the reasons stated above, the defendants' motion for summary judgment is granted.

The Clerk of the Court is respectfully directed to enter judgment and close this case.

**SO ORDERED.**

s/Ann M. Donnelly
_____
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
       September 30, 2020

14